## Alcalá del Olmo *v.* Sucesión Fernández.

## Apelación procedente de la Corte de Distrito de Guayama.

### No. 26. Resuelto en diciembre 9, 1905.

Hipoteca.—Procedimiento ejecutivo.—Título ejecutivo.—Una escritura de prórroga de un crédito hipotecario, aceptada por el deudor, es un documento que trae aparejada ejecución, y constituye título suficiente para fundar en él un procedimiento en ejecución de la hipoteca, sin que sea necesario presentar en tal caso la escritura primitiva de constitución del referido crédito.

Id.—Excepciones.—La infracción de las disposiciones del art. 1445 de la antigua Ley de Enjuiciamiento Civil, no puede alegarse como excepción en un juicio ejecutivo, en el que sólo son admisibles las excepciones taxativamente enumeradas en el art. 1462 de la misma Ley.

Id.—Embargo de frutos y rentas.—Las cuestiones que surjan en un juicio ejecutivo respecto á la administración judicial, en caso de embargo de frutos y rentas, deben ventilarse en pieza separada.

Id.—Juicio ejecutivo sumarísimo.—La jurisprudencia establecida por el Tribunal Supremo de Puerto Rico de que para la ejecución de una hipoteca debe seguirse exclusivamente el procedimiento sumario especial de la Ley Hipotecaria, no es aplicable á aquellos casos en que se trate de ejecutar una hipoteca constituída con anterioridad á la fecha en que empezó á regir la Ley Hipotecaria, pues en esos casos el acreedor puede seguir dicho procedimiento, ó el ordinario, según le conviniere.

Mandatario.—Mandato.—Los actos de un mandatario no pueden calificarse de nulos, mientras no se demuestre que hubiere traspasado los límites del mandato.

Id.—Mandante.—Si el mandatario hubiere traspasado los límites del mandato, el mandante queda obligado por los actos de aquél, desde el momento en que los ratificare.

Hipoteca.—Cobro de intereses.—Para que puedan tener aplicación las disposiciones del art. 114 de la Ley Hipotecaria, en un procedimiento sobre ejecución de hipoteca, en que se trate de cobrar, además del capital, los intereses vencidos, es necesario que de los autos aparezca justificada la existencia de otros créditos posteriores á aquel que se trata de ejecutar.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Manuel F. Rossy.*

Abogado del apelado: *Sr. Vías Ochoteco.*

EL JUEZ ASOCIADO SR. HERNÁNDEZ, emitió la opinión del tribunal.

Con fecha 11 de julio de 1897, ante el suprimido juzgado de primera instancia de Guayama, don Evaristo Alcalá del Olmo presentó demanda ejecutiva contra la sucesión de don Vicente Fernández Monjardin para el cobro de un crédito hipotecario, alegando como hechos: que por escritura pública de 5 de junio de 1887, inscrita en el Registro de la Propiedad, don Jesús M. Texidor constituyó á su favor hipoteca sobre una estancia llamada "Jájome", sita en el término municipal de Cayey, para garantir el pago de un crédito de doce mil pesos mejicanos con el interés del nueve por ciento anual, á vencer en igual día y mes de 1892; que por otra escritura de 7 de junio de 1891, también inscrita, vendió Texidor dicha estancia á don Vicente Fernández Monjardin por precio de veinte mil pesos, de los que retuvo el comprador los doce mil de la hipoteca para pagárselos á Alcalá del Olmo en la fecha de su vencimiento: que por otra escritura de 21 de noviembre de 1892, igualmente inscrita en el Registro de la Propiedad, Alcalá del Olmo otorgó á Fernández Monjardin una prórroga de cinco años para el pago del crédito hipotecario, el que por tanto, había de vencer en 5 de junio de 1897: que á consecuencia del canje de la moneda mejicana por moneda provincial, convinieron, el apoderado de la sucesión de don Vicente Fernández, porque ya éste había fallecido, y el apoderado de Alcalá del Olmo, en reducir al dos y medio por ciento el quebranto de la moneda, que por ley se había señalado en un cinco por ciento: y concluyó con la súplica de que habiendo vencido la prórroga del crédito sin haber sido satisfecho, se librara mandamiento de ejecución contra la sucesión deudora para el pago de los doce mil pesos mejicanos, reducidos á once mil setecientos provinciales mediante el descuento convenido del dos y

medio por ciento, intereses desde 5 de junio de 1897 y costas calculables en mil doscientos pesos, embargándose la finca hipotecada con sus frutos pendientes y semovientes.

A la demanda se acompañó como título ejecutivo primera copia de la escritura pública de 21 de noviembre de 1892, en que Alcalá del Olmo prorrogó á Fernández Monjardin por cinco años el pago del crédito hipotecario de los doce mil pesos, y posteriormente, también antes de de despacharse la ejecución, presentó el ejecutante la escritura de 7 de junio de 1891 por la que Texidor vendió á Fernández la estancia hipotecada reteniendo en su poder los doce mil pesos de la hipoteca para pagarla.

El juzgado de Guayama por auto de 15 de julio de 1897, ordenó el despacho de la ejecución, y previo requerimiento de pago de la sucesión Fernández, compuesta de doña Belén Ortiz, viuda de Fernández Monjardin, y doña Belén Fernández de Benito, se practicó el embargo de la finca hipotecada y de sus frutos pendientes, sin que se encontraran bienes semovientes, nombrándose depositario á don Ricardo Haddock, á quien también por auto de 17 de julio citado, recaído á instancias de la parte ejecutante, se confió la administración judicial de los frutos pendientes embargados, con obligación de rendir al juzgado cuentas detalladas y justificadas de su administración, cada seis meses ó antes si así se dispusiera.

La sucesión Fernández se opuso á la ejecución alegando como excepciones las siguientes: 1a. la de pacto de no pedir y de novación del contrato respecto del capital reclamado, puesto que las partes ejecutantes y ejecutadas, por medio de sus respectivos apoderados, habían convenido en que la obligación hipotecaria se entendería prorrogada por un año más, interín se ponían de acuerdo para la concesión de una prórroga de 5 años, prórroga que luego fué otorgada por el acreedor en Madrid, sin que llegara á consignarse en instrumento público por fal-

ta de apoderado bastante de la sucesión deudora: 2a. la de pago de los intereses de un mes, ó sea desde 5 de junio de 1897 á igual día del mes de julio siguiente, por estar ya satisfechos esos intereses: 3a. la de *plus petition*, por reclamarse intereses de un mes ya satisfechos, y mayor capital é intereses que los debidos, pues se hacía la reducción de la moneda mejicana á provincial con sólo un descuento de dos y medio por ciento, cuando el descuento legal era de un cinco por ciento: 4a. la de falta de título ejecutivo, por no haberse acompañado á la demanda el título fundamental del crédito, ó sea la escritura de 5 de junio de 1887 en que don Jesús M. Texidor constituyó á favor de don Evaristo Alcalá del Olmo hipoteca sobre la estancia "Jájome" para garantir el pago de doce mil pesos mejicanos, y por no ser ejecutivo el título presentado ó sea la escritura de prórroga de 21 de noviembre de 1892, toda vez que esa escritura fué otorgada por los apoderados del acreedor, Sobrinos de Ezquiaga, faltando abiertamente á las instrucciones de su mandante, quien les concedió autorización para otorgar dicha prórroga, pero interviniendo el verdadero deudor don Jesús M. Texidor, quien no intervino en aquel documento; por todo lo cual concluyó la parte demandada con la súplica de que se declarara no haber lugar á pronunciar sentencia de remate, ó se declarara nulo el juicio, mandando siempre alzar el embargo, con especial condenación en daños, perjuicios y costas al ejecutante.

La representación de don Evaristo Alcalá del Olmo al evacuar el trámite de oposición á la ejecución, insistió en la demanda y se avino á la *plus petition* en cuanto á rebajar ochenta y siete pesos sesenta y cinco centavos por los intereses ya satisfechos del 5 de junio á 5 de julio de 1897.

Durante el período probatorio se practicaron las pruebas propuestas por las partes, y después de haber ena-

jenado el ejecutante á su hermana doña Blanca Alcalá del Olmo el crédito reclamado se dictó sentencia por la Corte de Distrito de Guayama en la forma que revela el acta que se transcribe á continuación:

"El día 29 de noviembre de 1904, se llamó este pleito para juicio y compareció el demandante representado por su abogado, no habiendo comparecido el demandado. El abogado del demandante, dió lectura al escrito de demanda, y presentó una moción enmendando la misma y presentó varios documentos como prueba, que constan agregados á los autos. La Corte después de oir el escrito de la demanda, aceptar la moción enmendando la misma y el informe del abogado, se reservó la resolución. Hoy día 30 de diciembre de 1904, resuelve la Corte: que es de opinión que la ley y los hechos están á favor del demandante, por tanto, ordena que éste recobre del demandado la suma de $11.700 provinciales. ó su equivalente en oro americano, con los intereses al 9% anual desde el día 5 de julio de 1897, con las costas de este pleito al demandado. Y en vista de que la reclamación del demandante está asegurada por una hipoteca sobre la finca descrita en la demanda, y que existe embargo practicado sobre la misma, cuya descripción es la siguiente: estancia ó finca rústica constante de 1255 cuerdas de terreno, equivalentes á 493 hectáreas, 26 áreas, 56 centiáreas, radicadas en el barrio de "Jájome Alto", del término municipal de Cayey, lindando por el Norte, con el camino de la altura, al Sur, con la cuchilla divisoria de las jurisdicciones de Guayama y Cayey, y además con terrenos de Don Antonio Suárez, al Este, terreno de Don Antonio Ramón Vázquez, los de Don José Antonio y Don José María López, y los de Doña Juliana Torres, y al Oeste, con los de Don Gregorio Vázquez, y los de Don Lucas Díaz, la cual propiedad está destinada al cultivo del café y contiene además pastos y montes con casa de vivienda, varios ranchones, almacenes y secaderas para dichos frutos. Se ordena la debida ejecución de dicha hipoteca, y que se libre orden de venta al marshall para que en debida forma, venda la dicha finca en subasta pública, en la entrada de esta Corte, en cualquier día y en las horas señaladas por la ley, después de haber dado aviso de la fecha, lugar y manera de hacer la subasta, por medio de un edicto publicado una vez á la semana, por tres semanas consecutivas, en algún periódico de más circulación en este Distrito Judicial, y también dando aviso por medio de tres carteles que serán fijados, uno en la dicha finca, otro en la entrada de esta Corte y otro en el lugar de los más públicos de este Distrito

Judicial. Y el marshall venderá la dicha finca al mejor postor, otorgando la escritura de venta de la mencionada finca. Y del producto de la venta, el Marshal satisfará las costas de este pléito y los gastos de esa subasta. Pagará al demandante ó á su representante la suma que se le adjudica en esta sentencia, y lo restante del producto, será entregado al demandado ó á su representante; y si de la venta no resultare dinero suficiente para satisfacer esa sentencia, que se libre ejecución en contra de los demás bienes del demandado, hasta que sea satisfecha esta sentencia, concediéndole treinta días de gracia antes de expedir la orden de venta.—Dada, pronunciada y publicada en Corte abierta el día treinta de diciembre de 1904.—Charles E. Foote.—Angel García, Secretario."

Contra esa sentencia interpuso la representación de la sucesión Fernández recurso de apelación que ha formalizado en doble alegato ante esta Corte Suprema, pretendiendo que se declare la nulidad de la sentencia apelada y del juicio ejecutivo desde la presentación de la demanda de ejecución, ó en el caso de no ser procedente la nulidad, se corrija ó enmiende la sentencia en el sentido de hacerse la reducción de la moneda mejicana á provincial con el descuento de un cinco por ciento y después la reducción á moneda americana, según se ordena en la sentencia, debiendo cobrarse solamente los intereses de tres años por haber un segundo acreedor hipotecario, y someterse además la deuda al resultado de la liquidación de la administración judicial de la finca hipotecada desde el 17 de julio de 1897 hasta el día en que se verifique el pago.

Las alegaciones hechas por la parte apelante en apoyo de sus pretensiones puede sintetizarse como sigue:

1a.—La ejecución se inició y tramitó con arreglo al procedimiento del juicio ejecutivo establecido por la antigua ley de Enjuiciamiento Civil, y sólo estaba pendiente de sentencia definitiva cuando comenzó á regir la nueva ley, por lo que no ha podido celebrarse un nuevo juicio como ha hecho la corte de Guayama, sin el consentimiento por lo menos de la otra parte, y sin que se hubiese

dejado sin efecto el anterior, siendo, por consiguiente, nulo lo actuado.

2a.—Debiendo regularse el procedimiento por los preceptos de la antigua ley de Enjuiciamiento Civil, la ejecución es nula por falta de título con fuerza ejecutiva pues el ejecutante no presentó con su demanda la escritura de cinco de junio de 1887 en que Texidor constituyó á favor de Alcalá del Olmo el crédito hipotecario reclamado, como tampoco fué presentada la escritura de venta de la finca hipotecada de 7 de junio de 1891, de Texidor á Fernández, que es otro título fundamental de la ejecución, documentos tanto más necesarios cuanto que la escritura de prórroga de la hipoteca de 21 de noviembre de 1892 que se acompañó á la demanda como título ejecutivo, no se encuentra ya en los autos, porque fué desglosada á petición del mismo ejecutante, como también se desglosó la escritura de cesión ó enajenación de la hipoteca por Alcalá del Olmo á favor de su hermana doña Blanca.

3a.—Al despacharse la ejecución por el antiguo juzgado de primera instancia de Guayama se infringió el artículo 1445 de la antigua ley de Enjuiciamiento Civil, porque tratándose de una ejecución hipotecaria sólo debieron embargarse los bienes afectos á la hipoteca, no obstante lo cual el embargo se hizo extensivo á todos los bienes que había en la finca, y se constituyó ésta en administración judicial, ocasionando su completa ruina.

4a.—Contra la jurisprudencia establecida por esta Corte Suprema en los casos de *Pizá* contra *Díaz, Viader* contra *Quiñones,* y *Márquez* contra *Aguiló,* de que cuando se trata de la ejecución de una hipoteca debe adoptarse exclusivamente el procedimiento sumario especial de la Ley Hipotecaria, desarrollado en su reglamento, el juicio se sometió á la anterior ley de Enjuiciamiento Civil hasta llegar al estado de sentencia.

5a.—La reducción de la moneda mejicana á provincial debió hacerse tomando por base de descuento el tipo legal de cinco por ciento y no del dos por ciento, pues al convenir don Mariano Benito Heredia, en representación de la sucesión Fernández, con el apoderado de don Evaristo Alcalá del Olmo, en que sólo se descontara el dos y medio por ciento perjudicó á aquella sucesión y no procedió como un diligente padre de familia, infringiendo así el artículo 1719 del Código Civil antiguo, que es el 1621 del revisado, sin que por tanto la sucesión Fernández tenga la obligación de cumplir lo convenido por su apoderado Benito Heredia, por haberse excedido éste de los límites del mandato, según el artículo 1727 del Código antiguo y 1629 del nuevo Código.

6a.—Como el artículo 114 de la vigente Ley Hipotecaria conforme con el 122 de la antigua, ordena que la hipoteca constituída á favor de un crédito que devengue interés no asegurará en perjuicio de tercero sino los intereses de los dos últimos años y la parte vencida de la anualidad corriente, es claro que la parte ejecutante, en el caso de prosperar la demanda, sólo puede cobrar los intereses de la anualidad comenzada en cinco de junio del presente año y además los correspondientes á los dos años anteriores, por existir otra hipoteca posterior sobre la misma finca á favor de la señora viuda de Ardura.

En cuanto al primer fundamento del recurso, el acta de celebración del juicio que ya se deja transcrita revela que en ese acto, al que asistió únicamente la parte demandante representada por su abogado, éste dió lectura al escrito de demanda, presentó una moción enmendando la misma y produjo como prueba varios documentos agregados á los autos, reservándose la Corte de Guayama dictar resolución después de haber oído el escrito de demanda y el informe del abogado y de haber aceptado la moción enmendando dicha demanda, cuya enmienda

se limitó según el récord, á explicar que los 11,700 pesos á que quedaba reducida la deuda mediante el canje de la moneda mejicana por provincial eran provinciales. No vemos que además de las pruebas que se habían practicado durante el término concedido por la antigua Ley de Enjuiciamiento Civil se practicaran otras nuevas, pues los documentos producidos en el acta llamada de celebración del juicio constaban agregados en autos y no aparece que la corte sentenciadora, al pronunciar su fallo, tuviera en cuenta otras pruebas que las que en tiempo legal fueron practicadas.

Siendo ello así, no es dable afirmar que la Corte de Guayama celebrara un nuevo juicio sujetándose á la ley de Enjuiciamiento Civil que comenzó á regir desde primero de julio de 1904, pues no hizo más que aceptar el procedimiento en el estado en que se encontraba y terminarlo con arreglo á dicha ley, sin otorgar derechos á la parte demandante que lastimaran los de la parte demandada.

La lectura del escrito demanda, la aceptación de una moción sobre enmienda que la aclaraba, y la presentación de documentos obrantes en autos, no podrían influir en el resultado final del juicio en perjuicio de la parte demandada, pues la demanda leída y los documentos presentados habían de ser examinados por la corte sentenciadora para resolver el caso sometido á su resolución, y la enmienda de la demanda era consecuencia necesaria del canje de la moneda para aclarar que se reclamaban once mil setecientos pesos provinciales y no americanos, enmienda que tampoco era necesaria, pues del texto y contexto de la demanda claramente se desprendía que el total de la cantidad reclamada era en moneda provincial y no americana.

La escritura pública de 21 de noviembre de 1892 por la que don Evaristo Alcalá del Olmo concedió á don

Vicente Fernández Monjardin una prórroga de cinco años para el pago del crédito hipotecario que se obligó á satisfacer á Alcalá del Olmo cuando adquirió la estancia "Jájome" hipotecada por don Jesús Ma. Texidor, cuya escritura en primera copia se acompañó á la demanda en justificación del crédito que se reclamaba por estar vencido, era título que traía aparejada ejecución con arreglo al número 1 del artículo 1427 de la antigua Ley de Enjuiciamiento Civil, pues al concederse en dicho título una prórroga para el pago, que aceptaba el deudor, éste ratificaba la existencia del crédito prorrogado, y por tanto, aunque la escritura primitiva de constitución de dicho crédito fuera corroborante de su existencia, holgaba la presentación de la misma, máxime habiéndose presentado, como se presentó, antes de despacharse la ejecución la de siete de junio de 1891 por la que Texidor vendió á Fernández la estancia "Jájome" con la hipoteca garantizando la deuda reclamada. Esa deuda está justificada por modo fehaciente, y ni la misma parte ejecutada se ha atrevido á negar su existencia. Poco importa que fuera desglosado de autos el documento de 21 de noviembre de 1892, que sirvió de base á la ejecución habiendo quedado como quedó constancia de la presentación de aquel documento y certificación expresiva de haber sido inscritas en el Registro de la Propiedad la escritura de cinco de junio de 1887, por la que Texidor constituyó á favor de Alcalá del Olmo el crédito hipotecario y la otra escritura de siete de junio de 1891 por la que al adquirir Fernández la estancia "Jájome" se obligó á pagar dicho crédito á Alcalá del Olmo.

Aún en el supuesto de que se hubiera infringido el artículo 1445 de la antigua ley de Enjuiciamiento Civil esa infracción viciaría de nulidad el juicio ejecutivo, en el que sólo son admisibles las excepciones que taxativamente se enumeran en el artículo 1462 de la ley citada.

Las cuestiones relativas á la administración judicial en caso caso de embargo de frutos y rentas deben ventilarse en la correspondiente pieza separada, y así lo acordó en el presente caso el juzgado de 1a. instancia de Guayama por auto de 17 de julio de 1897, disponiendo á la vez que el depositario administrador nombrado don Ricardo Haddok rindiera cuentas detalladas y justificadas de su administración cada seis meses ó antes si así se dispusiere.

La jurisprudencia establecida por esta Corte Suprema en los casos citados por la parte apelante de que para la ejecución de una hipoteca debe seguirse exclusivamente el procedimiento sumario especial de la Ley Hipotecaria desarrollado en su reglamento, no es aplicable al presente caso, en el que se trata de una hipoteca constituída antes de regir la actual Ley Hipotecaria y su Reglamento, pues para ese caso preceptúa el penúltimo apartado del número 3 del artículo 175 de dicho reglamento, que los acreedores que tengan inscrito su derecho con anterioridad á la ley vigente, podrán optar por el procedimiento sumario, de cuyo precepto se colige que tienen la libertad de seguirlo ó de acomodarse al establecido por la Ley de Enjuiciamiento Civil, como lo hizo la representación de don Evaristo Alcalá del Olmo.

Respecto á si don Mariano Benito Heredia infringió las leyes del mandato al convenir, en representación de la sucesión Fernández con el apoderado de don Evaristo Alcalá del Olmo, en que al fijarse el montante de la deuda é intereses con motivo del canje de la moneda mejicana por provincial se tomara por base de descuento el tipo de 2 1|2 por ciento y no de 5 por ciento que era el legal, entendemos que ese convenio no puede calificarse de nulo mientras no se demuestre que Benito Heredia traspasó los límites del apoderamiento, lo cual no consta de autos por faltar en éstos, testimonio del poder que le otorgara la sucesión Fernández, y sostenemos además que si Beni-

to Heredia se apartó de las instrucciones de la sucesión
poderdante cuando verificó aquel convenio ó á falta de
ellas no obró como un diligente padre de familia, la suce-
sión Fernández podría ejercitar contra aquél  los dere-
chos de que se crea asistida, pero no contra don Evaristo
Alcalá del Olmo, que trataba con la sucesión Fernández
debidamente representada.  Además la sucesión Fernán-
dez ratificó dicho convenio tomando por base para pago
de intereses la liquidación de la deuda convenida por
Benito Heredia con Alcalá del Olmo bajo el descuento de
un dos y medio por ciento.

No se ha discutido en los autos si sobre la finca hipote-
cada á favor de Alcalá del Olmo existe ó no otra hipoteca
posterior á favor de la señora viuda de Ardura, ni tam-
poco hay la más ligera prueba de la constitución de seme-
jante hipoteca.  Falta, por consiguiente, base para definir
si es de aplicación ó no al presente caso el artículo 114 de
de la Ley Hipotecaria.  La señora viuda de Ardura po-
drá ejercitar los derechos de que se crea asistida, en el
tiempo, modo y forma correspondientes.

Finalmente el cobro de la deuda de que se trata no
puede someterse al resultado de la liquidación de la ad-
ministración judicial de la finca hipotecada, si esa admi-
nistración ha sido perjudicial y aún ruinosa á la sucesión
Fernández, medios tiene para hacer valer sus derechos
sin demorar por más tiempo el pago de una deuda cierta,
líquida y vencida.

Entendemos, pues, en mérito de todo lo expuesto, que
debe confirmarse la sentencia apelada con las costas del
recurso á cargo de la parte apelante.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y
Asociados. Figueras, MacLeary y Wolf.